589 So.2d 1158 (1991)
Sharon A. SMITH, Individually and/or on Behalf of Her Minor Child, Melissa Ann Estrade
v.
Gerald P. ESTRADE.
No. 91-CA-218.
Court of Appeal of Louisiana, Fifth Circuit.
November 13, 1991.
*1159 Nick R. Noriea, Jr., New Orleans, for plaintiff/appellant.
Fred M. Trowbridge, Jr., James D. McMichael, New Orleans, for defendant/appellee.
Before DUFRESNE and GOTHARD, JJ., and FINK, J. Pro Tem.
ELORA C. FINK, Judge Pro Tem.
Plaintiff, Sharon Smith, appeals a summary judgment granted to defendant State Farm Mutual Automobile Insurance Company (State Farm) in Smith's wrongful-death/survivor's action for the violent death of her minor child, Melissa Estrade. Melissa died at the hands of her father and custodial parent, Gerald Estrade, while riding in a vehicle driven by him. We affirm the summary judgment, for the reasons that follow.

FACTS
On August 3, 1988, Melissa Estrade was reported missing. Her decomposed body was found by local law enforcement authorities several months later in a wooded area. Subsequently, Gerald Estrade was arrested and charged with the first-degree murder of Melissa. On February 5, 1990, Estrade entered a plea of guilty to manslaughter, a violation of LSA-R.S. 14:31.
According to Estrade's testimony in his plea colloquy, while he was driving Melissa to day camp on August 3, 1988, they began to argue. The argument escalated until he grabbed Melissa and shook her and, he said, "The next thing I knew, she was dead." He stated he was still driving the vehicle at the time. He related further that he started to drive to Mississippi to seek the advice of his sister-in-law because he did not know what to do; instead, he ended up in a wooded area, where he left Melissa's body. Estrade stated he accepts responsibility for the child's death.
On June 9, 1989, Sharon Smith, Estrade's ex-wife and the mother of Melissa, filed suit against Estrade for her daughter's wrongful death. She filed a supplemental and amending petition on March 14, 1990, adding Estrade's automobile liability insurer, State Farm, as a defendant. On October 6, 1990, State Farm filed a motion for summary judgment, denying coverage on the grounds that Melissa's death was caused by an intentional act and did not arise out of the use of the automobile. After a hearing on November 30, 1990, judgment granting the motion was rendered on December 4, 1990.

ISSUES
On appeal, Smith asserts there are material issues of fact to be resolved relating to whether the death was an "accident" within the meaning of the policy and whether the death resulted from the "use" of the car. Alternatively, she asserts the motion was prematurely considered because no discovery had taken place when the motion was granted.
*1160 State Farm, as appellee, asserts that the policy does not provide coverage because the automobile must be essential to the theory of liability in order for the "arising-out-of-use" provision to apply. It further contends the motion was not premature, because the plaintiff's suit was filed fourteen months prior to filing of the motion for summary judgment.
The pertinent policy language in this case appears under "Section ILiability Coverage A" on the policy, which states:
We will:
1. pay damages which an insured becomes legally liable to pay because of:
a. bodily injury to others,
* * * * * *
caused by accident resulting from the ownership, maintenance or use of your car * * *.
[Emphasis in original shown by boldface type; emphasis added shown by underlining.]
State Farm attached to its motion for summary judgment a copy of the State Farm policy, a transcript of Gerald Estrade's statements made during his plea colloquy, and a memorandum of law. Smith submitted a memorandum in opposition to the motion. There, and in her brief to this Court, she argues Estrade's may have caused Melissa's death inadvertently since he was unable to properly judge the effect of his acts against the child while his attention was on his driving. As did State Farm, she attached to her memorandum copies of the insurance policy and of Estrade's statements at his plea colloquy.

DISCUSSION
LSA-C.C.P. art. 966 provides that a motion for summary judgment is properly granted only if the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, if any, show that there is no genuine issue of material fact and that the mover is entitled to judgment as a matter of law. This procedure should be used cautiously and any reasonable doubt should be resolved against the mover in favor of a full trial on the merits. Penalber v. Blount, 550 So.2d 577 (La. 1989). Decisions as to the propriety of granting the motion must be made with reference to the substantive law applicable to the case. Talamo v. Johnston, 554 So.2d 800 (La.App. 5 Cir.1989). Summary judgment is not, however, a substitute for trial. See Caplan v. Pelican Homestead and Sav. Ass'n, 542 So.2d 622 (La.App. 5 Cir.1989). Further, summary judgment is not appropriate when the evidence presented attempts to establish subjective facts such as motive, intent, good faith knowledge, or malice. Penalber v. Blount, supra; Caplan v. Pelican Homestead and Sav. Ass'n., supra.
The burden of proof is on the mover to establish there are no genuine issues of material fact. Caplan v. Pelican Homestead and Sav. Ass'n., supra. A fact is material if its existence or nonexistence may be essential to plaintiff's cause of action under the applicable theory of recovery. Penalber v. Blount, supra. If a fact potentially insures or precludes recovery, if it affects the litigant's ultimate success, or if it determines the outcome of the case, it is "material" for purposes of the summary judgment. Id.
Smith contends there are material questions of fact regarding whether Gerald Estrade negligently or intentionally caused the death of Melissa Estrade and whether Melissa's death resulted from the use and/or ownership of Gerald Estrade's automobile. We pretermit the question of whether Melissa's death was caused by an accident because the "arising-out-of-use" issue resolves the matter in State Farm's favor.
Smith's argument regarding the "arising-out-of-use" requirement of the policy relies on jurisprudence that holds there is "use" for purposes of an automobile insurance policy if the activity causing the injury is one commonly or readily associated with the use of a vehicle. The appellant asserts that dealing with children while driving is such an activity and that Melissa's death resulted from Estrade's attempt to reprimand Melissa while his attention was also on the road. At the least, Smith *1161 argues, the issue is one of fact, precluding summary judgment.
In analyzing the question of whether an activity arises out of the use of an automobile under an automobile liability policy, two questions must be answered: First, the plaintiff must prove that the insured's conduct was a legal cause of the injury; second, that the conduct was a use of the vehicle. Carter v. City Parish Government, Etc., 423 So.2d 1080 (La. 1982), followed in Kessler v. Amica Mut. Ins. Co., 573 So.2d 476 (La.1991). These issues are distinct and must be addressed separately. Carter v. City Parish Government, Etc., supra; Kessler v. Amica Mut. Ins. Co., supra. The duty/risk analysis is used to determine legal cause and, if legal cause is found, then it must be determined whether the harm arose out of use of the vehicle. Lucey v. Harris, 490 So.2d 416 (La.App. 5 Cir.1986), writ denied, 496 So.2d 327 (La.1986).
As noted in Carter and Kessler, the "arising-out-of-use" question is often the most difficult to answer. To conclude that an injury arose out of the use of the automobile, a court must find the vehicle essential to the theory of liability. Lucey v. Harris, supra. In this regard, a court should apply a common sense approach to determine whether the duty breached by the insured flows from the automobile's "use" under the policy language. Fertitta v. Palmer, 252 La. 336, 211 So.2d 282 (1968). If the duty breached is independent of the use of the car, then no liability can arise. Lucey v. Harris, supra; Fertitta v. Palmer, supra; see also, Picou v. Ferrara, 412 So.2d 1297 (La.1982); LeJeune v. Allstate Ins. Co., 365 So.2d 471 (La.1978).
In the Lucey case, a widow brought suit against a taxicab driver and his insurer for the death of her husband, who was shot by a passenger in the taxicab. The insurer filed a motion for summary judgment with respect to coverage and the motion was granted. After analyzing cases from other circuits involving batteries that occurred in a vehicle or in conjunction with the use of a vehicle and in which the issue was whether coverage existed under the respective automobile liability policies, we noted that courts have consistently refused to extend the "arising-out-of-use" provision of the policies to instances that involved gunshots and physical attacks. We affirmed the summary judgment, concluding that the tortfeasor-passenger's use of the taxicab was only incidental to the injuries sustained by the shooting victim and that the accident did not flow from use of the vehicle within the meaning of the insurance policy. See: Tolleson v. State Farm Fire & Cas. Co., 449 So.2d 105 (La.App. 1st Cir.1984), writ denied, 450 So.2d 968 (La. 1984); Dupuy v. Gonday, 450 So.2d 1014 (La.App. 1st Cir.1984); Topole v. Eidson, 464 So.2d 406 (La.App. 1st Cir.1985); Ramsey v. Continental Insurance Company, 286 So.2d 371 (La.App. 2d Cir.1973), writ denied, 287 So.2d 187 (La.1973); Tobin v. Williams, 396 So.2d 562 (La.App. 3rd Cir. 1981); Mangum v. Weigel, 393 So.2d 871 (La.App. 4th Cir.1981).
In a later case, Currera v. Loyd, 531 So.2d 544 (La.App. 5 Cir.1988), the tortfeasor kidnapped, raped and murdered a three-year-old child. The child's parents filed suit against the perpetrator and his automobile liability insurer, but the insurer was dismissed pursuant to a motion for summary judgment. On appeal this Court affirmed the summary judgment, holding, "Kidnapping, rape and murder are neither activities flowing from the use of a vehicle nor reasonable and natural consequences of the use of a vehicle." 531 So.2d at 546.
In Kessler v. Amica Mut. Ins. Co., supra, the plaintiff was injured by a gunshot from an unidentified motorist following a near accident with the unknown driver. The Supreme Court found the duty breached by the unidentified motorist existed independently of his use of the automobile and was incidental to the vehicle's use within the meaning of the "use" provision of the policy:
The only interpretation of "use" which would result in a finding that the conduct in this case was use of the vehicle is a holding that "use" may be interpreted to mean "while using." Such an interpretation would extend the meaning of the *1162 arising-out-of-use provision of the policy beyond the contemplation of the parties to the contract and would not comport with the common-sense interpretation mandated by Fertitta v. Palmer, 252 La. 336, 211 So.2d 282 (1968).
573 So.2d 476 at 479.
Therefore, we must apply to this case the two-step analysis enunciated in Carter, supra. It is uncontested that Melissa's death resulted when Estrade, while driving, shook the child in an alleged effort to reprimand her. The appellant contends it was the combination of the driving and the shaking that resulted in the child's death, so that both together were the cause-in-fact of the injury.
In order to determine whether the conduct complained of was a legal cause of plaintiff's injury, it is necessary to define the duty which was breached by the offender and to determine whether the risk created by the breach is within the scope of the duty.
Kessler v. Amica Mut. Ins. Co., supra, at 478.
As to his driving, Estrade was under the general duty imposed by LSA-R.S. 32:58, which requires a driver to maintain reasonable and proper control of his vehicle. That duty is imposed to avoid the risk of injury to others resulting from negligent operation of a vehicle. Although a parent's "disciplining" his child while driving might cause a vehicular accident, in this case Melissa's injury did not result from negligent operation of the vehicle. Rather, it resulted from her father's excessive force in shaking her.
When examined in this light, it is clear the act of shaking the child to death has no reasonable connection to the use of the automobile. It was, instead, a breach of Estrade's duty to Melissa to discipline her without causing her harm; that duty existed independently of his use of the automobile and was incidental to that use. The risk of shaking a child to death is not contemplated by the duty to maintain control of a vehicle.
As stated in Kessler, supra, at 478, "There is no ease of association between the duty [in this case, to maintain control of one's vehicle] and the risk [of injuring one's child by use of excessive force]."
Smith next contends the summary judgment was improperly granted because it was prematurely considered. She argues a litigant should be afforded discovery before a summary judgment is rendered, to provide the litigants "a fair opportunity to present their claim," citing Simoneaux v. E.I. du Pont De Nemours, 483 So.2d 908, 913 (La.1986).
There is no absolute right, however, to delay such action until discovery is completed. Simoneaux v. E.I. du Pont De Nemours, supra. Under C.C.P. art. 967, the trial judge has discretion to issue a summary judgment or to require further discovery. Id. Unless the opposing party can show a probable injustice, a suit should not be delayed pending discovery when the evidence shows at a early stage in the proceedings that there is no genuine issue of fact. Id. There is no absolute right to discovery prior to a hearing on a motion for summary judgment and the only requirement is that the litigants be given a fair opportunity to be heard. Id.
In this case, fourteen months elapsed from the date suit was filed until the hearing on the motion for summary judgment. Smith makes no reference to any specific discovery germane to the case that had not been completed. Nor does she assert any specific prejudice that may result from rendition of summary judgment at this stage of the proceedings. Accordingly, we find the trial judge did not abuse his discretion in this matter. See: R & R Enter. v. Rivers & Gulf Marine Survey, 476 So.2d 12 (La.App. 5 Cir.1985).
For the foregoing reasons, the judgment of the trial court is affirmed. Costs of this appeal are assessed against the appellant, Sharon Smith.
AFFIRMED.