526 So.2d 824 (1988)
Alfred K. NIPPERT, Jr.
v.
BATON ROUGE RAILCAR SERVICES, INC. and Great Atlantic Insurance Company.
No. CA 86 0663.
Court of Appeal of Louisiana, First Circuit.
March 7, 1988.
Rehearing Denied June 6, 1988.
*825 Byard Edwards Jr., Ponchatoula, for plaintiff 2nd appellant.
Gregory J. Laborde, Lafayette, for Baton Rouge Railcar Services 1st appellant.
Robert Morrison, Co-Counsel, & William Cooper, Denham Springs, for Baton Rouge Railcar Services.
Frank X. Neuner, Lafayette, for Great Atlantic Ins. Co. 1st appellant.
*826 Before LOTTINGER, ALFORD and CHIASSON,[*] JJ.
CHIASSON, Judge.
In this breach of contract action, all parties appeal the trial court's judgment in favor of plaintiff and against defendants. We amend and affirm.
Nippert and Baton Rouge Railcar Services made an oral agreement whereby Baton Rouge Railcar Services was to repair and refurbish several of Nippert's passenger railcars, and Nippert was to supply a large number of the parts. The work apparently progressed satisfactorily for a while; indeed plaintiff testified at trial that he had paid Baton Rouge Railcar about $215,000.00 in repair bills. Ultimately, however, a dispute arose, and plaintiff, claiming that Baton Rouge Railcar was overcharging him, refused to pay any more bills. Baton Rouge Railcar then sued Nippert to recover the unpaid balance of his repair bill. Nippert removed the case to federal court, and Baton Rouge Railcar subsequently obtained a judgment against Nippert for $32,000.00.
Plaintiff then filed this suit, alleging damages as a result of Baton Rouge Railcar's failure to repair his railcars properly, and failure to protect from the weather both the interior of the dome car, and the spare parts he supplied. Made defendant along with Baton Rouge Railcar was its insurer, Great Atlantic Insurance Company. The trial court rendered judgment in favor of plaintiff and against the two defendants in solido for $795,647.00[1], and all parties have appealed.

RES JUDICATA
Defendants contend that the trial court erred in overruling their exception of res judicata. Res judicata bars relitigation of the object of an earlier judgment when the thing demanded is the same, and it is founded on the same cause of action between the same parties in the same capacities seeking the same relief. LSA-R.S. 13:4231; Vicknair v. Hibernia Bldg. Corp., 479 So.2d 904, 908 (La.1985). This is clearly not the case, and consequently the trial court was correct in overruling the exception of res judicata. In the earlier suit filed by Baton Rouge Railcar, the thing sought was payment of amounts Nippert owed for repairs of his railcars. The present suit, although arising out of this same factual situation, seeks damages for improper repairs and improper handling of the railcars and the equipment.
The claim of res judicata, however, seems to be largely based on the argument that Nippert's action would have been a compulsory counterclaim in the suit to recover the amount due for repairs. There are no compulsory counterclaims in Louisiana, and it is specious to suggest that Louisiana courts should follow the rules of the federal courts. We make no determination, however, on the question whether a federal court in a diversity action, such as Baton Rouge Railcar's action against Nippert, should apply the federal or the state procedural rules on the issue of compulsory counterclaims.
WHERE THE DAMAGES OCCURRED
Defendants also contend that the court erred in finding Baton Rouge Railcar liable for the damage to the railcars and the equipment. Relying heavily on the fact that Nippert left the cars and the equipment exposed to the elements even after he removed them from Baton Rouge Railcar's yard, Baton Rouge Railcar contends that Nippert did not prove that the damage to the equipment actually occurred during the time it was on the premises of Baton Rouge Railcar. Although the record clearly shows that Nippert did indeed store the cars and the equipment so that they were exposed to the weather for a long period of time after removing them from the premises of Baton Rouge Railcar, the record also supports the court's finding that these *827 items had been seriously damaged by exposure to the weather while in the Baton Rouge Railcar yard. Once the damage was done by six months exposure to the weather, including storage in an area that flooded at the Baton Rouge Railcar yard, major repairs were necessary for which Baton Rouge Railcar is liable. Any increase, however, in the cost of repair or replacement occasioned by Nippert's own improper storage of the items thereafter of course is not the responsibility of Baton Rouge Railcar.

QUANTUM
Claiming that the court's award places the plaintiff in a better position than he was in initially, defendants argue that the court erred by awarding excessive damages. Trial courts are given great discretion in making damage awards, but they must be made in accordance with the law. Carter v. Gulf States Util. Co., 454 So.2d 817, 820 (La.App. 1st Cir.1984). The general measure of damages for breach of an obligation is the sum which would place the plaintiff in the same position as if the obligation had been fulfilled, Gibbs Constr. Co. v. Thomas, 500 So.2d 764, 770 (La. 1987), not in a better position. Lemon v. Fein 467 So.2d 548, 554 (La.App. 4th Cir.), cert. denied, 472 So.2d 594 (La.1985). If the thing damaged can be adequately repaired, damages should be the difference in value prior to and following the damage. If the value before and after the damage cannot be reasonably determined, or if the cost of repairs exceeds the value of the thing damaged, then damages will be the cost of replacing the items less reasonable depreciation. Carter v. Gulf States Util., 454 So.2d at 820.
The trial court awarded $671,330.50 for repairs to motors, generators and compressors, and $15,000.00 for repairs to batteries. Although the record supports a conclusion that these amounts would be necessary to put these items into working order, the record does not indicate that all of these items were in working order when they arrived at the Baton Rouge Railcar yard. Donald A. Whatley, an expert on availability and acquisition of repair parts for repair and refurbishing of rail passenger cars, and an employee of Amtrak, testified that Nippert bought practically all of Amtrak's surplus inventory from the yard in Hialeah, Florida, when Amtrak switched to a different power source for its railcars. According to Whatley, in most cases the spare parts were working when they were sold to Nippert, but he had no way of knowing how near they were to needing reconditioning.
Nippert purchased this equipment by the pound at Amtrak auctions, and only ten to twenty percent of the equipment was either new or rebuilt. Therefore an award which would allow Nippert to rebuild and recondition all of the parts is clearly excessive. On the other hand, we cannot assess with any certainty the exact state of repair the equipment was in initially. Yet when plaintiff has a right of recovery, but the damages cannot be ascertained with certainty, courts have discretion to assess damages based upon all the pertinent facts and circumstances. LSA-C.C. art. 1999; Harrigan v. Freeman, 498 So.2d 58, 64 (La.App. 1st Cir.1986). Consequently we conclude that an amount necessary to rebuild half of the equipment, that is $343,165.25, is the highest reasonable amount necessary to restore Nippert to his former position regarding the motors, generators, compressors, and batteries destroyed by Baton Rouge Railcar's failure to store them properly.
Defendants also complain of the trial court's award of $26,247.83 representing Nippert's cost to move the equipment from the Baton Rouge Railcar yard. They correctly point out that once the repairs were completed, Nippert would necessarily have incurred costs to remove the items from the Baton Rouge Railcar yard. Because there is no evidence that the costs incurred in the actual move were greater than they would have been had the dispute not arisen, the awarding of this item of damages was error. The record does, however, support the remaining amounts awarded by the court of $2,800.00 for repair to the dome windows, $10,269.15 for *828 redoing work done improperly by Baton Rouge Railcar, and $50,000.00 for the water damaged dome car, the Silver Cup.
Plaintiff complains of the court's failure to make an award for lost profits, and aggravation and mental anguish. Although lost profits and damages for nonpecuniary loss may be recovered in contract cases, see LSA-C.C. arts. 1995, 1998, we agree with the trial court that the record does not support such awards. Accordingly our review of the record requires us to reduce the trial court's award to $406,234.40.

INSURANCE COVERAGE
Great Atlantic contends that its policy issued to Baton Rouge Railcar simply does not cover this situation, and therefore that the trial court erred in holding it liable. Specifically Great Atlantic argues that coverage is precluded by the exclusionary provisions of the policy, and that the court erred by refusing to consider the exclusionary provisions, considering them affirmative defenses which Great Atlantic had not specifically pleaded before trial. A defendant's answer must set forth any matter constituting an affirmative defense. LSA-C.C.P. arts. 1003 and 1005. "An affirmative defense raises new matter which, assuming the allegations in the petition to be true, constitutes a defense to the action and will have the effect of defeating plaintiff's demand on its merits." Keller v. Amedeo, 512 So.2d 385, at 386 (La.1987). Reliance upon an exclusion contained in an insurance contract is deemed to be an affirmative defense, which must be specially pleaded in defendant's answer. In the absence of such pleading, no proof can be offered in connection with the exclusion. Tudury v. Cooperative Cab Co., 265 So.2d 307 (La.App. 4th Cir.1972). See Curry v. Iberville Parish Sheriff's Office, 378 So.2d 159, 161 (La.App. 1st Cir.1979).
The comprehensive general liability policy issued by Great Atlantic to Baton Rouge Railcar provides that the company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages to which the insurance applies caused by an occurrence as defined in the policy, subject to a $500,000.00 limit and certain exclusions.
Citing Fontana v. Zurich Ins. Co., 430 So.2d 718 (La.App. 2d Cir.) writ denied, 438 So.2d 569 (La.1983). Great Atlantic argues that it should have been allowed to offer evidence of the insurance policy exclusions, because it had adequately notified plaintiff of its intention to defend on that basis by raising the issue in its pretrial memorandum. It is true that the Fontana court did say that the plaintiff was adequately on notice of the defendant's intent to use a policy exclusion in its defense. Nevertheless, the exclusion at issue in Fontana was based on the fact that the plaintiff was an employee, and defendant had stated in its answer that plaintiff was an employee, even though it was not until the pretrial memorandum that it clearly stated that such status called into play the employee exclusion. Because our system is one of fact pleading, the Fontana defendant adequately raised the affirmative defense of the employee exclusion of the policy by pleading in its answer the fact that plaintiff was an employee. Thus Fontana is not in conflict with articles 1003 and 1005 of the Code of Civil Procedure, which provide that defendant shall set forth affirmative defenses in the answer.
In the instant case, Great Atlantic gave this plaintiff no such notice in its answer, and consequently the trial judge was correct in refusing to allow Great Atlantic to introduce evidence of an affirmative defense it had not specially pleaded in its answer.
The judgment in favor of plaintiff, Alfred K. Nippert, Jr., and against defendants, Great Atlantic Insurance Company and Baton Rouge Railcar, is amended and affirmed at defendants' costs.
AMENDED AND AFFIRMED.
NOTES
[*] Judge Remy Chiasson, retired, has been assigned temporarily to this Court by the Supreme Court of Louisiana to fill the vacancy created by the death of Judge John S. Covington.
[1] According to our calculation, the total amount should be $775,647.48.